## King's Registration

*E. Wallace Chadwick* and *Thomas A. Curren,* for appellant.

*Albert J. Williams,* for Registration Commission.

FRONEFIELD, P. J., September 28, 1936.—This appeal involves the rights and duties of a resident of a third class city who moved from one election district to another within that city more than 60 days before an election, but

who did not notify the registration commission of the removal until a time less than 60 days before the election. In this connection, it is necessary for us to consider article VIII, sec. 1, of the Constitution of Pennsylvania and The Permanent Registration Act in Cities of the Third Class of July 1, 1935, P. L. 478.

Appellant, King, moved from a residence in the sixth ward of the City of Chester to one in the eleventh ward of the same city on September 2, 1936, 62 days before the coming election, which will be held on November 3, 1936. On September 21, 1936, 43 days before the election, he delivered to the registration commission a notice of such removal on a form provided by the commission in accordance with section 23 of the Act of 1935, supra, requesting the transfer of his registration card from his former district to his present district. On the same day he delivered to the commission a signed request embodying the same information, but not on the form provided by the commission. The commission refused to grant either request because the notice had not been received by it 60 days before the election. On the same day he personally applied to the commission for a new registration as an elector of the fifth precinct of the eleventh ward and tendered a registration affidavit in the form prescribed by section 14 of the Act of 1935. The commission refused to grant the request because he was already registered in another election district.

The questions involved are: (1) Does the Act of 1935 require that removal notices be received by the registration commission 60 days before an election in order that the elector may vote at such election? (2) If so, is such requirement constitutional? (3) Is an elector entitled to register in a new election district when he has previously registered in another district where he no longer resides?

Originally article VIII, sec. 1, of the Constitution fixed, absolutely, the qualification of electors, and it was held that said qualifications could not be abridged, added to or altered by the legislature. However, by the amendment

of November 5, 1901 (Acts of 1901, P. L. 881), further amended on November 7, 1933 (Acts of 1933, P. L. 1559), as to matters immaterial to the appeal, such qualifications were made "subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact".

As a result of this amendment, registration laws, whether they require permanent or annual registration, are not unconstitutional unless their requirements and regulations are unreasonable. If the Act of 1935 requires a resident who removes from an election district to another to notify the commission at least 60 days before an election in order to vote at that election, we would have no difficulty in holding that such regulation was reasonable and that such provision would not be unconstitutional.

However, appellant contends that the act does not contain such a requirement. The commission contends that it does, relying on the following language contained in section 23 of the Act of 1935, supra:

"The commission shall provide removal notices, which it shall cause to be made available for the convenient use of registered electors. These notices shall be printed upon cards suitable for mailing, addressed to the office of the registration commission, and shall contain spaces wherein the elector shall write (1) the street and number of his present residence and the specific location thereof, including the number of the room, apartment, flat or floor, if his residence is a portion only of a house; (2) the street and number of the address from which he was last registered; (3) the date of his removal to his present address and (4) space wherein the elector shall sign his name. The removal notice shall contain a statement that the elector may, by filling out properly and signing a removal notice and returning it to the office of the commission, secure the transfer of his registration to the election district in which he resides, effective as to the elections and primaries occurring sixty days or more after the receipt

of the notice at the office of the commission. Each removal notice shall contain a warning to the elector that the notice will not be accepted as an application for transfer of the elector's registration unless the signature thereon can be identified by the commission with the elector's signature in the general and district register."

This section does not positively enact that such removal notices be received by the commission 60 days or more before an election or primary in order to be effective at such election or primary, but merely provides that upon forms furnished by the commission it shall print a statement or warning to the elector that he may, by filling out and returning the form to the commission, secure a transfer of his registration to his new election district effective to the elections and primaries occurring 60 days or more after the receipt of the notice at the office of the commission. In no other part of the act are the provisions contained in this statement or warning enacted into a law, requirement, or regulation. We feel that any such requirement which would suspend the franchise of an otherwise qualified elector should be in a definite, positive form and should not be accomplished in the back-handed language used in this section. The right to vote is a fundamental inheritance of all citizens, and in any question of a doubt as to the meaning of the legislature such doubt should be resolved in favor of the elector.

In addition, we find that the second warning to be printed in the removal form, i. e., that the transfer will not be made unless his signature can be identified by the commission, is followed by the provisions of section 24(c) outlining the procedure to be taken in such case. On the other hand, the procedure to be taken by the commission upon receipt of a notice which it believes to be authentic is outlined in sections 24(a) and 24(b), as follows:

"(a) Upon receipt of a signed removal notice properly filled out, or a signed request containing the required information and setting forth a removal of residence to

another location in the same city, the commission shall cause the signature thereon to be compared with the signature on the registration affidavit of the elector from whom the removal notice purports to come, and, if the signature shall appear authentic, shall enter the change of residence in the general and district registers, and, if the removal shall have been from one election district to another in the same city, shall transfer the registration affidavit of the elector from the district register of the election district of his previous residence to the district register of the election district of his new residence.

"(b) When a request for transfer, believed authentic by the commission, is received at the office of the commission and shows thereon removal within the period of two months next preceding an election or primary, and the removal shall have been from one election district to another, the commission shall transfer the registration affidavit of the elector from the district register of the election district of his previous residence, but shall not include it in the register of the district of his new residence until after the election or primary. In any case, the commission shall advise the elector promptly in writing of its action."

It is significant that there is no reference therein to the date when the notice is received by the commission, but the important date is the date of the actual removal as shown by the notice itself, whether in the form provided by the commission or in a signed request containing the required information. Reading these two sections together we find that where the date of removal is more than two months before the election or primary the commission shall (1) take the registration affidavit out of the former district register, (2) compare the signature with that on the notice and, if satisfied that the notice is authentic, (3) include the registration affidavit in the new district register. The only exception to the procedure is where the notice "shows thereon removal within the period of two months next preceding an election or pri-

mary". In this case, the commission shall (1) take the registration affidavit out of the former district register, (2) compare the signature with that of the notice and, if satisfied that the notice is authentic, (3) shall not include the registration affidavit in the new district register until after the election or primary.

In the present case, the removal notice showed "thereon" removal more than two months before the election and did not come within the exception provided by section 24(b); therefore we hold that the commission should have followed the procedure outlined in section 24(a).

Arriving at this conclusion, it becomes unnecessary to consider the application for personal registration. We will say, however, that we believe that, considering the act as a whole, it contemplates that only one registration affidavit shall be on file for each elector, and therefore no elector should be permitted to register until his former affidavit has been removed from its register for some cause covered by the act, although we must say that we find no such prohibition in the language of the act.

Counsel for the commission has argued that to hold as we have indicated would require the commission to make transfers right up to the time of the election, and that it would not be possible to make up street lists and take other steps required by the act. While we cannot pass upon such a question until it is actually presented to us, we will indicate to the commission that our present thought is that, in the absence of any limitation of time expressed in the act, a reasonable time is implied. Thus, in Registration in Cities of the Third Class, 6 Just. L. R. 88, and in Winemiller, etc., v. Cumbler et al., 30 Dauph. 396, where the Act of March 5, 1906, P. L. 63, provides that when an elector is unable to register because of sickness or necessary absence from the city, he may at any time present his petition to the county commissioners, it was held that this implied a reasonable time, construed to mean the time while the books were under the control of

the commissioners. Therefore, we will indicate that we consider the reasonable time implied in the present act to be that period when the commission is required to sit to receive personal applications for registration, i. e., until 30 days before an election or primary.

### Order

And now September 28, 1936, it is ordered and decreed that the order of the registration commission of Delaware County, Pa., refusing to transfer the registration affidavit of William P. King, be and it is hereby reversed.

It is further ordered and decreed that the registration commission of Delaware County, Pa., be, and it is hereby, directed to transfer the registration affidavit of William F. King from the district register of the third precinct of the sixth ward of the City of Chester, Pa., to the district register of the fifth precinct of the eleventh ward of the City of Chester, Pa., and to make the necessary change in the general register of the City of Chester, Pa.

From William R. Toal, Media.